UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 4:17CR00193 CDP/JMB |
| | ) | |
| | ) | |
| JAMES MAXWELL BARNETT, | ) | |
| | ) | |
| Defendant. | ) | |

**RESPONSE OF UNITED STATES TO DEFENDANT'S MOTION TO SUPPRESS**

Comes now the United States of America, by and through its attorneys, Carrie A. Costantin, Acting United States Attorney for the Eastern District of Missouri and Tracy Lynn Berry, Assistant United States Attorney for said district, and requests that this Honorable Court deny defendant's motion to suppress evidence seized by law enforcement officials and any statements he made to the officers during their encounter on April 25, 2017.

Relevant Facts

While on patrol, on April 25, 2017 at 7:48 am, Chesterfield, Missouri Police Officer Andrew Budd noticed a truck bearing a New Mexico license plate and a gray trailer parked across approximately multiple parking places in a county park. As he drove past the vehicle, he noticed that the passenger appeared pale, and was laying with her head against the window. Being concerned about the possibility of a medical emergency, he parked his patrol car behind

1

the trailer without activating his lights, siren, or body recorder.  Upon approaching the driver's side of the vehicle, the officer saw the driver for the first time.

The defendant, the driver, acknowledged the officer, and opened his window.  When Officer Budd asked about the passenger's welfare, the defendant nudged the passenger, defendant's co-defendant, awake.  Since it was unusual to find vehicles such as that driven by the defendant in the park, and parked in that manner, Officer Budd asked the defendant why they were in the area.  During their conversation, the defendant began to exhibit nervous characteristics.  As a result of his responses and behavior, the officer asked the defendants for their identification.

Defendant, who remained seated in the vehicle, presented a Washington D.C. driver's license bearing his name, and his co-defendant presented a State of Colorado identification card in the name of A.M.W.[1]  After receiving the identification documents, the officer conducted a computer search and learned that both individuals had active felony warrants from New Mexico.  The officer instructed the defendant to exit the vehicle, and informed him that they would be detained until the warrants could be confirmed.  Upon receiving verification, the officer placed the defendant under arrest, and read him the Miranda warning.  The defendant affirmed that he understood his rights, and waived his right to be silent.

Lieutenant Dan Dunn, rather than Officer Budd, questioned the defendant.  The defendant advised the lieutenant that the trailer belonged to his grandfather.  Although he also said that he and a friend had loaded the trailer in Arkansas, the defendant was unable to identify

---

[1] The passenger, who identified herself as Angela Parrott, explained that she had not obtained a new identification card after her divorce.

2

the trailer's contents. When the questions continued regarding the contents of the trailer, the defendant terminated the interview. A search of the defendant's wallet after his arrest revealed notes containing the personal information of C.P.G. and M.W.B.

Consistent with the policies and practices of the Chesterfield Police Department, an inventory search of the truck was conducted prior to its being towed. From the cab of the truck the officers discovered, and seized: multiple counterfeit identification documents and credit/debit cards; pieces of paper with the personal identifying information of others; memory cards; flash drives, and other items. The truck bed also contained counterfeit access devices and device-making equipment.

The officers also arranged for the towing of the trailer. The trailer lacked a license plate and the sticker bearing the vehicle identification number which should have been found on the side of the trailer. In addition, the etching of the vehicle identification number had been scratched off the tongue of the trailer, and covered with black, electrical tape. Unlike the truck, the trailer was not searched at the scene because its contents had been secured with a lock. A detective from the police department obtained a search warrant for the trailer from the Circuit Court of St. Louis County, Missouri.[2] (Exhibit A). Upon executing the warrant, the search of the trailer revealed numerous items, including: device-making equipment; a blank American Express credit card; plastic card stock; credit card applications completed with the information of other individuals; counterfeit access devices; a firearm; and, ammunition.

---

[2] Exhibit A. The affiant mistakenly claims that both defendants were asleep when Officer Budd approached, and that the defendant authorized the search of the vehicle.

3

Legal Analysis

The government submits that the police officers did not violate the defendant's constitutional rights when they: approached his parked vehicle; arrested him on an outstanding warrant; and, questioned him after he was Mirandized.[3]  Nor did the inventory search of the defendant's vehicle after his arrest and the search of the trailer pursuant to the search warrant violate his constitutional rights.   While the affidavit for the search warrant contained minor discrepancies, the mistakes were not deliberate or reckless, and did not adversely impact the probable cause established by the remaining facts.

As an initial matter, the government submits that the officer did not suspect the defendants were engaged in criminal activity when he initially approached.  Instead, he stopped his patrol car and went up to the cab of the truck out of concern for the passenger who appeared to be in medical distress.  Officer's Budd's welfare check of the occupants of a parked vehicle was within the duties and responsibilities of a patrol officer.  United States v. Gipp, 147 F.3d 680, 685 (8th Cir. 1998)(Contact between a highway patrol officer and the occupants of what appeared to be a stranded vehicle was permissible as a welfare check.)  Thus, defendant's constitutional rights were not implicated by the encounter because "[i]t is well settled that not all interactions between law enforcement officers and citizens amount to seizures under the Fourth Amendment."  United States v. Cook, 842 F.3d 597, 600 (8th Cir. 2016).

Even after Officer Budd determined that the passenger did not require medical attention, the additional interaction between the defendant and the officer did not implicate the defendant's

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).  The government will be prepared to present testimony that the defendant was advised of his Miranda Rights when he was placed in custody, and before he was questioned by law enforcement authorities.

4

constitutional rights.  Since the officer did not use physical force or engage in a show of authority to restrain the defendant during the initial questioning, his conduct in asking routine questions did not rise to the level of a Fourth Amendment seizure.  Id.  In cases addressing when an encounter between an officer and occupants of a vehicle become a seizure, the issue turns on when the vehicle's occupants are compelled to do something by the police officer.  Id.

The Court of Appeals for the Eighth Circuit held, in United States v. Barry, that the occupants of a vehicle parked late at night in an alley behind a shopping mall had not been seized until they were required to exit their car.  United States v. Barry, 394 F.3d 1070, 1075 (8th Cir. 2005).  Referencing Barry, the Eighth Circuit Court of Appeals, in United States v. Cook, "determined that the officer's actions in approaching the parked car, shining a light on his uniform, keeping a hand on his holstered gun, and knocking on the passenger side window 'did not amount to a show of authority such that a reasonable person would believe he was not at liberty to ignore [the officer's] presence and go about his business.'"  United States v. Cook, 842 F.3d at 600(quoting United States v. Barry, 394 F.3d at 1075).  When the appellate court applied the rationale of Barry in Cook, it found that there was no seizure until the officer ordered the defendant to exit the vehicle because (1) Cook's car was parked at the time the officers decided to investigate, (2) the interaction occurred late at night in a high crime area, and (3) the officers did not compel him to roll down his window or to engage with them.  Id. at 600-601.  Similarly, the defendant's liberty, in the case at bar, was not restrained until the officer learned that a warrant for arrest had been issued for the defendant.  Since the initial detention and the subsequent arrest was based upon the arrest warrant, the seizure of the defendant and his passenger did not violate the Fourth Amendment.

5

Nor was the Fourth Amendment violated when the officers conducted an inventory search of the defendant's truck. "Law enforcement officers may conduct a warrantless search when taking custody of a vehicle to inventory the vehicle's contents 'in order to protect the owner's property, to protect the police against claims of lost or stolen property, and to protect the police from potential danger.'" United States v. Ball, 804 F.3d 1238, 1240–41 (8th Cir. 2015(quoting United States v. Hartje, 251 F.3d 771, 775 (8th Cir.2001)). The totality of the circumstances presented to the officers clearly mandated that they would have to tow the defendant's truck and trailer, and that it was incumbent upon them to inventory the contents of the unlocked truck cab and unsecured truck bed. The fact that the officers did not search the locked trailer refutes the claim that the inventory search was a pretext to further a criminal investigation. Nevertheless, even if the officers possessed an investigatory motive, the valid impoundment of a vehicle and trailer would not have prevented them from towing the vehicle and trailer, and conducting an inventory search. United States v. Evans, 781 F.3d 433, 437 (8th Cir. 2015).

The government also recognizes that the affidavit presented in support of the warrant to search the trailer contained errors. However, the representations that both of the occupants of the truck were asleep when Officer Budd approached and that the defendant consented to the search of the truck are insufficient to refute the probable cause remaining in the balance of the affidavit. See, United States v. Delaware, 438 U.S. 154 (1978). Excluding the minor discrepancies leaves the remainder of the affidavit showing a fair probability that the officers would find contraband or evidence of a crime in the locked trailer. See, Illinois v. Gates, 462 U.S. 213, 238 (1983). At most, the mistakes identified in the affidavit amount to mere negligence on the part of the affiant

6

rather than rising to the level of deliberate or reckless conduct that is necessary to void a search warrant.  United States v. Neal, 528 F.3d 1069, 1072 (8th Cir. 2008).  Since the defendant has not made "a substantial preliminary showing that there was an intentional or reckless false statement… which was necessary to the finding of probable cause," he would not be entitled to a hearing on this issue.  United States v. Snyder, 511 F.3d 813, 816 (8th Cir. 2008).

For the aforementioned reasons, the United States requests that this Honorable Court deny defendant's motion to suppress the evidence seized, and the statements he made to Lieutenant Dunn.[4]

                                        Respectfully submitted,
                                        CARRIE A. COSTANTIN
                                        Acting United States Attorney

                                        s/ Tracy L. Berry
                                        TRACY L. BERRY  014753 TN
                                        Assistant United States Attorney
                                        111 South 10th Street, Rm. 20.333
                                        St. Louis, Missouri  63102
                                        314-539-2200

## CERTIFICATE OF SERVICE

Copy of the foregoing will be forwarded through the court's electronic case filing system to Charles J. Banks, Esq., this 6th day of August, 2017.

                                          s/ Tracy Lynn Berry
                                        ASSISTANT UNITED STATES ATTORNEY

---

[4] Miranda v. Arizona, 384 U.S. 436 (1966).  Statements made to Officer Budd during the initial encounter were not subject to Miranda because the defendant was not in custody, and the questioning was not intended to elicit incriminating statements.